IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLUMBIA

| | |
|---|---|
| DEANAH MAY,<br>3126 Newton Street NE<br>Washington DC 20018<br><br>    Plaintiff<br>  v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br>600 5th Street NW<br>Washington DC 20001<br><br>And DOES I and II,<br><br>    Defendants | COMPLAINT<br><br><br><br><br>CIVIL ACTION NO: 1:12-CV-1569 |

## COMPLAINT

Plaintiff Deanah May ("Ms. May"), by and through her undersigned counsel, brings this action for injunctive relief and damages against Defendant Washington Metropolitan Area Transit Authority ("WMATA"), Defendant DOE I, and Defendant DOE II, (collectively, the "Defendants"), and alleges the following:

## INTRODUCTION

1.  This is a suit for damages and other relief as may be just, proper, and equitable, to remedy WMATA's, DOE I's, and DOE II's violations of Ms. May's right to basic and essential transportation services under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*., Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, the regulations promulgated under those statutes, as well as her physical injuries resulting from Defendants' common law tort violations.

<u>PARTIES</u>

2.  Plaintiff Ms. May resides at 3126 Newton Street NE, Washington, District of Columbia.  Ms. May has quadriplegia—a physiological disorder that causes Ms. May to have severely restricted use of her arms, hands, and legs. Because of this, she requires the use of a wheelchair to move around, and requires an aide to perform many major life functions such as eating and bathing. Ms. May, therefore, is a "qualified individual with a disability" pursuant to 42 U.S.C. § 12131(2).  She relies exclusively on public transportation for all daily activities including banking, medical appointments, grocery shopping, personal appointments, and recreation.

3.  Defendant WMATA is an instrumentality of Maryland, Virginia, and the District of Columbia, created by an interstate compact (the "Compact") with the consent and approval of Congress to operate a mass transit system for the District of Columbia and the surrounding area.  Pub. L. No. 89-774, 80 Stat. 1324 (1966) (codified as amended in D.C. Code § 9-1107.01 *et seq.*).  WMATA is the primary provider of public transportation in the Washington, D.C. metropolitan area, and is a recipient of federal financial assistance.

4.  The true names of Defendants DOES I and II are unknown to Ms. May, who therefore sues these Defendants under fictitious names.  At all times mentioned herein, Defendants DOES I and II, bus drivers, were the agents, servants, contractors, and employees of Defendant WMATA, and were acting within the course and scope of said agency, service, contract, and employment.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331, because the claims arise under federal law, specifically the ADA, 42 U.S.C. § 12131 *et seq*., and the Rehabilitation Act, 29 U.S.C. § 794.

6. This Court also has jurisdiction under D.C. Code § 9-1107.01, the Compact that created WMATA and provides for original jurisdiction in the U.S. District Courts for all actions brought by and against WMATA.

7. Venue of this action properly lies in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this suit occurred in the District of Columbia.

## FACTS

8. Ms. May was involved in a bicycle accident in 1987. The resulting severe injury to her sixth cervical vertebrae left her quadriplegic. Although she has severely restricted use of her limbs, her spinal cord was not severed, so Ms. May can still experience pain.

9. Ms. May is unable to walk and uses an electric wheelchair.

10. Ms. May has relied on the handicap-accessible features of WMATA's transportation system since the date she became disabled in 1987.

### June 11, 2010 Incident

11. On June 11, 2010, at approximately 2:30 p.m., Ms. May was waiting for a bus at the cross-section of Rhode Island Avenue Northeast and Otis Street Northeast in the District of Columbia.

12. A mostly full T-18 bus arrived, the driver, Defendant DOE I, lowered the lift for Ms. May, and Ms. May directed her wheelchair backwards onto the lift.

13. Once Ms. May was in position, the front barrier began rising upward, but instead of stopping at a ninety degree angle, it continued to fold toward Ms. May as if it was retracting into the stowed position, even though Ms. May was occupying the lift.  Without stopping, the barrier continued to fold and pushed its full weight upon her legs, pinning and scraping Ms. May.

14. The front barrier cut into Ms. May's legs, resulting in lacerations, bleeding, and scarring.

15.  The pressure from the barrier caused Ms. May to be in intense pain.  Throughout the time the barrier was retracting into the stowed position, she screamed for help.  The busload of people and other patrons waiting for other buses stared at Ms. May as she experienced intense pain and anxiety.

16. For the several minutes Ms. May was trapped with the barrier gouging into her legs, she could hear the bus driver, Defendant DOE I, attempting to correct the lift, but since her back was to him, she could not see anything he may or may not have been doing.

17. Several passengers exited the bus and attempted to pull the barrier off of Ms. May, but were unsuccessful.

18. After several minutes, the front barrier returned to an upright position so that it was no longer exerting pressure on Ms. May's legs.  However, the barrier would not move from this position and Ms. May remained trapped.  It was not until the paramedics arrived and physically lifted Ms. May from her wheelchair that she was freed from the lift.

19.  The bus driver, Defendant DOE I, asked if Ms. May would like an ambulance, and she replied that she would.  Approximately ten minutes later, an ambulance arrived on the scene.

20. Shortly after Ms. May was carried into the ambulance by paramedics, one of WMATA's supervisors arrived on the scene. The supervisor asked Ms. May for her name and address, and provided her with a phone number to call if she wished to file a claim.

4

21. In connection with the incident WMATA created an incident report and the Transit Police Department created an event report.  Both outline the facts stated above.

22. Ms. May was treated in the emergency room at Providence Hospital.

23. Ms. May received a shot to prevent infection and an antiseptic cream, and the emergency room doctor instructed Ms. May to follow up with her primary care physician.

24. On July 1, 2010, and October 14, 2010, Ms. May visited her primary care physician per the emergency room doctor's instructions.

25. As someone with quadriplegia, Ms. May experiences pain in a different way from the typical injured person.  Once she sustains an injury, she continues to feel weight and pressure, which does not abate.

26. Ms. May is still in severe pain today and still has scars from the injuries to her legs caused by the lift's failure.

27. Following the incident, Ms. May called the phone number the supervisor gave her in an attempt to resolve the claim.  Despite several conversations about the incident, Ms. May and WMATA personnel were unable to reach a satisfactory resolution.

<u>December 28, 2011 Incident</u>

28. On or about the afternoon of December 28, 2011, Ms. May was returning home from a trip to the Safeway grocery store at 1601 Maryland Avenue Northeast, Washington, D.C.  20002.

29. She was waiting on the corner of Bladensberg Road Northeast and Benning Road Northeast in the District of Columbia for the B-2 bus.

30. The bus arrived approximately half full.

31. Ms. May and a second individual in a wheelchair drove their wheelchairs up to the front of the bus to board.  The bus driver, Defendant DOE II, stated he was in a hurry because he was

behind schedule. The driver informed her that there was another bus following him and she would have to board that bus.

32. Defendant DOE II then permitted the approximately ten to fifteen nondisabled passengers to board.

33. Ms. May observed that after all nondisabled passengers were permitted to board there was still room on the bus for her and the other individual in a wheelchair.  Nonetheless, the driver, Defendant DOE II, pulled away and Ms. May was forced to wait for the next bus.

COUNT ONE
VIOLATIONS OF TITLE II OF THE
AMERICANS WITH DISABILITIES ACT OF 1990

34. Ms. May re-pleads and incorporates by reference paragraphs 1 through 33 of the Complaint as fully set forth herein.

35. The ADA and the regulations promulgated thereunder ensure that people with disabilities have equal access to the same services that people without disabilities enjoy by prohibiting qualified individuals with disabilities from being excluded from, subject to discrimination by, or denied services by, a public entity by reason of their disability.  42 U.S.C. § 12132; 49 C.F.R. §§ 37-39.

36. WMATA is a public entity.  42 U.S.C. § 12131(1).

37. Ms. May is a qualified individual with a disability.  42 U.S.C. § 12131(2).

38. Ms. May has been discriminated against by reason of her disability, quadriplegia.

39. As detailed further below, WMATA denied Ms. May full and equal enjoyment and access to WMATA's services, facilities, privileges, advantages, or accommodations in violation of the ADA.

40. Discrimination through denial of basic public transportation has impeded Ms. May's enjoyment of the rights of citizenship resulting in isolation, loneliness, social deprivation, loss of dignity, and humiliation.

## First Violation of the ADA

41. Public transportation authorities are required to maintain in operative condition those features that make vehicles accessible to persons with disabilities including, but not limited to, wheelchair lifts.  49 C.F.R. § 37.161.

42. Public transportation authorities are required to establish a system of regular and frequent maintenance inspections.  49 C.F.R. § 37.163(b).

43. On information and belief, WMATA has neglected to ensure the proper inspection, maintenance, repair, and/or operation of bus wheelchair lifts and has directed or allowed its drivers to operate buses with malfunctioning wheelchair lifts.

44. A properly functioning lift is not supposed to fold or retract into the stowed position while it is occupied.  49 C.F.R. § 38.23(b)(2)(i).

45. WMATA discriminated against Ms. May, a passenger with a disability, when its wheelchair lift violated federal regulations by retracting into the stowed position while she occupied the lift, thus denying her equal access to public transportation by reason of her disability.

## Second Violation of the ADA

46. WMATA, acting through Defendant DOE II, discriminated against Ms. May when DOE II denied her bus service simply because he was allegedly running late and she was in a wheelchair, thus denying her equal access to public transportation by reason of her disability.

<u>COUNT TWO</u>
<u>VIOLATION OF THE REHABILITATION ACT</u>

47. Ms. May re-pleads and incorporates by reference paragraphs 1 through 46 of the Complaint as fully set forth herein.

48. Like  the ADA, the Rehabilitation Act provides that an otherwise qualified individual with a disability shall not be excluded from, denied services, or subjected to discrimination solely based on her disability by any entity receiving federal financial assistance.  29 U.S.C. § 794(a).

49. Ms. May is an individual with a disability because as a quadriplegic Ms. May has a physical impairment that substantially limits several major life activities, such as eating and bathing. 29 U.S.C. § 705(20)(B).

50. Ms. May was otherwise qualified to receive the benefit of WMATA's transportation services.

51. WMATA, through its agents, servants, contractors, and employees violated the Rehabilitation Act by subjecting Ms. May to discrimination, excluding Ms. May from participation in and denying Ms. May the benefits of WMATA's services.

52. WMATA's denial of services is solely based on Ms. May's disability.

53. At all times relevant to the action, WMATA was a recipient of federal funding within the meaning of the Rehabilitation Act.  29 U.S.C. § 794(b).

54. As a result of the aforementioned acts, Ms. May has suffered physical and economic injuries.

55. WMATA, through its agents, servants, contractors, and employees has denied Ms. May the benefits of service by, among other things:

   a.  Failing to properly inspect, maintain, repair, and/or operate wheelchair lifts that are needed to allow persons with mobility impairments to board and get off WMATA's buses.

b.   Preventing her from boarding a bus that was running late solely because she was in a wheelchair.

56. As a result of the aforementioned acts, Ms. May has suffered physical, emotional, and economic injuries amounting to a total of $25,000.

<u>COUNT THREE</u>
<u>NEGLIGENCE</u>

57. Ms. May re-pleads and incorporates by reference paragraphs 1 through 56 of the Complaint as fully set forth herein.

58. At the time of the June 11, 2010 incident, DOE I was employed by WMATA, and was operating within the course and scope of such employment at all material times related to this lawsuit.

59. At all times mentioned, WMATA, acting through its agent DOE I, had a duty to transport passengers with disabilities with the highest possible care and diligence.

60.  WMATA's duty included inspecting WMATA's buses to make sure its wheelchair lifts were appropriately functioning before leaving the yard.

61. On information and belief, WMATA and/or DOE I breached this duty by failing to properly inspect, repair, maintain, and/or operate its wheelchair lift, which WMATA and/or DOE I knew or should have known would result in risk of serious harm.

62. WMATA and DOE I had a duty to comply with WMATA's maintenance schedule and policies for wheelchair lifts.

63. On information and belief, WMATA and/or DOE I breached this duty by failing to comply with WMATA's maintenance schedule and policies for wheelchair lifts.

64. Ms. May's injuries to her legs and the resulting pain and suffering were solely and proximately caused by WMATA's and/or DOE I's negligence.

9

65. Ms. May's injuries were the natural and probable consequence of WMATA's and/or DOE I's negligence.

66. As a result of WMATA's and/or DOE I's negligence, Ms. May was injured as described above.

## COUNT FOUR
## NEGLGIENCE RES ISPA LOQUITOR

67. Ms. May re-pleads and incorporates by reference paragraphs 1 through 66 of the Complaint as fully set forth herein.

68. The cause of the accident in this case is known to be the front barrier scraping down Ms. May's legs.

69. The wheelchair lift was at all times in the exclusive control of WMATA and its agents, servants, contractors, and employees.

70. The wheelchair lift would not have malfunctioned in the way it did, injuring Ms. May, absent negligence of the persons responsible for operating, maintaining or repairing it.

## COUNT FIVE
## NEGLIGENCE PER SE

71. Ms. May re-pleads and incorporates by reference paragraphs 1 through 70 of the Complaint as fully set forth herein.

72. WMATA's and its agents', servants', contractors', and employees' violations of the ADA and its implementing regulations posed an unreasonable risk of injury to wheelchair users and individuals with mobility impairments.  49 C.F.R. § 37.163 (b) and 49 C.F.R. § 38.23 (a)(2)(i).

73. Ms. May's injuries were caused by these statutory violations, statutes which were enacted to protect from exactly this type of harm.

10

## PRAYER FOR RELIEF

WHEREFORE, Ms. May prays judgment against WMATA for the following relief:

On Counts One and Two:

1. For a declaratory judgment declaring that Defendants' actions, omissions, policies, and
   practices violate rights guaranteed to Ms. May under the ADA and Rehabilitation Act;

2. For punitive damages in an amount to be determined at trial;

3. For costs and attorney's fees pursuant to 29 U.S.C. § 794 (a); 42 U.S.C. § 12133;

On Counts Three, Four, and Five:

4. For general and economic damages (past and future) in an amount to be determined at
   trial;

For All Counts:

For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Ms. May demands a trial by jury of all issues triable of right by a jury, pursuant to
Federal Rule of Civil Procedure 38(b).


/s/

_____

Robert Dinerstein
D.C. Bar no. 373443
202.274.4147
Disability Rights Law Clinic
Washington College of Law
American University
4801 Massachusetts Ave NW Suite 417
Washington DC 20016